UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:04-cv-197-Orl-22DAB

INTERSCOPE RECORDS, a California
general partnership; CAROLINE
RECORDS, INC., a New York
corporation; CAPITOL RECORDS,
INC., a Delaware corporation;
MAVERICK RECORDING
COMPANY, a California joint venture;
WARNER BROS. RECORDS INC., a
Delaware corporation; LONDON-SIRE
RECORDS INC., a Delaware
corporation; UMG RECORDINGS,
INC., a Delaware corporation; SONY
MUSIC ENTERTAINMENT INC., a
Delaware corporation; MOTOWN
RECORD COMPANY, L.P., a California
limited partnership; ARISTA
RECORDS, INC., a Delaware
corporation; FONOVISA, INC., a
California corporation; BMG MUSIC, a
New York general partnership;
ATLANTIC RECORDING
CORPORATION, a Delaware
corporation; ELEKTRA
ENTERTAINMENT GROUP INC., a
Delaware corporation; PRIORITY
RECORDS LLC, a California limited
liability company; and VIRGIN
RECORDS AMERICA, INC., a
California corporation,

Plaintiffs,

v.

DOES 1 - 25,

Defendants.

## PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION DATED APRIL 1, 2004
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Local Rule 6.02, Plaintiffs respectfully submit their objections to the Magistrate Judge's Report and Recommendation of April 1, 2004 (hereinafter "Magistrate Judge's Report" or "Mag. Report") (Attached as Ex. 1).

After filing their complaint in this case, Plaintiffs sought leave to issue limited immediate discovery in order to identify the Defendants in this case. *See* Plaintiffs' *Ex Parte* Motion for Leave to Take Immediate Discovery (Attached as Ex. 2). Rather than address the merits of that motion, the Magistrate Judge *sua sponte* entered an order to show cause challenging the sufficiency of the complaint. *See* Order to Show Cause (Attached as Ex. 3). Following a response from the Plaintiffs, *see* Plaintiffs' Response to Order to Show Cause (Attached as Ex. 4), the Magistrate Judge issued a report that both the Plaintiffs and as-yet unidentified Defendants are improperly joined in this case, recommended severance of all claims except those by the first Plaintiff against the first Defendant, and denied Plaintiffs' motion without prejudice. Mag. Report at 10-11.[1] The Magistrate thus recommended that each of the 16 Plaintiffs file separate lawsuits against each of the 25 Defendants, resulting in 400 separate lawsuits in this jurisdiction along with 400 separate motions for leave to issue immediate discovery. That recommendation is both premature and wrong as a matter of law.

As discussed below, the issue of joinder is premature, given that it was not raised by any Defendant, the Defendants have not even been identified yet, and the issue can be fully resolved once all parties are before the court. In any event, the Magistrate Judge applied an erroneous and

---

[1] The Magistrate Judge ordered Plaintiffs to show cause why the case should not be dismissed for improper joinder, as well as for an inadequate showing of personal jurisdiction and venue. Following briefing by Plaintiff, the Magistrate Judge concluded that it "agrees that the issues of personal jurisdiction and venue can be addressed after the Defendants are identified." Mag. Report at 3. Thus, Plaintiffs' objections relate only to the question of joinder.

overly restrictive view of the rules of joinder, which courts have long held should be liberally construed to promote convenience and efficiency.  Here, the Magistrate Judge's recommendation would have the exact opposite effect, resulting in an enormous waste of judicial resources and an administrative nightmare for this District.

Indeed, the overwhelming majority of courts that have recently addressed identical motions filed by these same Plaintiffs (and other record companies) in similar cases across the country have granted them, finding that issues such as joinder should be resolved only after all Defendants have been identified.  S*ee infra* pp. 12-13 (citing *25 courts* that have granted identical motions).  As the District Court for the District of Columbia recently explained, "[i]t is clear to the Court that Defendants must be identified before this suit can progress further"; thus, consideration of issues such as joinder is "premature" until after the defendants have been identified.  Memorandum Opinion, *UMG Recordings v. Does 1-199*, at 2 (D.D.C. Mar. 10, 2004) (Attached at Ex. 4, at Ex. E) (Plaintiffs' Response to Order to Show Cause).  Accordingly, this Court should grant Plaintiffs' *Ex Parte* Motion for Leave to Take Immediate Discovery, and should reserve judgment on the question of joinder until the Defendants have been identified and have had the opportunity to present their views on joinder to the Court.

## BACKGROUND

Plaintiffs in this case are major recording companies who own copyrights in sound recordings.  Collectively, they face a massive problem of digital piracy over the Internet.  Every month, copyright infringers unlawfully disseminate billions of perfect digital copies of Plaintiffs' copyrighted sound recordings over peer-to-peer ("P2P") networks.  *See* Lev Grossman, *It's All Free*, Time, May 5, 2003.  A P2P network is an online media distribution system that allows users to transform their computers into an interactive Internet site, disseminating files for other

users to copy.  The most infamous P2P network was the Napster system, which was shut down by a federal court injunction.  *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).  Other P2P networks have, however, arisen in Napster's wake.  As a result of the rise of P2P networks, Plaintiffs have sustained and continue to sustain devastating financial losses.  *See* http://www.riaa.com/pdf/2002yrendshipments.pdf (detailing retail sales declines of 7% in 2000, 10% in 2001, and 11% in 2002).

There is no dispute that P2P users who disseminate (upload) copyrighted material and who copy (download) such material violate the copyright laws.  *See A&M Records, Inc.*, 239 F.3d at 1013-14; *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004).  Copyright infringement over P2P networks is widespread in great part, however, because – like so many activities on the Internet – it can be done using an alias that conceals one's true identity.  Copyright owners, like the Plaintiffs in this case, can observe copyright infringement occurring on P2P networks, but cannot (without assistance) identify the true names and locations of the infringers.

Each of the Defendants in this case is an active participant in the Fast Track network, the largest current P2P network.  Second Declaration of Jonathan Whitehead ¶ 4 ("Second Whitehead Decl.") (submitted as Exhibit A to Plaintiffs' Response to Order to Show Cause Dated March 5, 2004).[2]  As such, each Defendant offers copyrighted sound recordings stored on his or her computer for others to download and downloads copyrighted sound recordings from other users of the Fast Track network.  Plaintiffs caught each of the Defendants in this case openly disseminating sound recordings whose copyrights are owned by Plaintiffs.  By logging

---

[2] Plaintiffs have provided the Court with two declarations of Jonathan Whitehead, the first attached to Plaintiffs' *Ex Parte* Motion for Leave to Take Immediate Discovery and the second attached to Plaintiffs' Response to the Order to Show Cause.

onto the Fast Track network, Plaintiffs viewed the files that each Defendant was offering to other users of the network. Each Defendant in this case is a significant infringer: each has chosen to make available from his or her computer hundreds or thousands of sound recordings, whose copyrights are owned by various of the Plaintiffs. *See* Declaration of Jonathan Whitehead in Support of Plaintiffs' *Ex Parte* Motion for Leave to Take Immediate Discovery ¶ 17 ("Whitehead Decl."); Second Whitehead Decl. ¶ 5.

Upon finding each Defendant disseminating large numbers of copyrighted works, Plaintiffs gathered further evidence of the infringement. As explained in more detail in the first Whitehead Declaration, Plaintiffs downloaded a list of the files disseminated by each Defendant. *See* Whitehead Decl. ¶¶ 16, 17. Plaintiffs have provided to the Court, as an example, detailed lists of the hundreds of files being distributed by three of the Defendants. *See* Exhibit 1 to Whitehead Decl. Plaintiffs have also provided testimony under oath that they possess virtually identical evidence for all of the Defendants, showing each Defendant was disseminating hundreds of sound recordings whose copyrights are owned by various of the Plaintiffs. *See* Whitehead Decl. ¶ 17; Second Whitehead Decl. ¶ 5.[3] Plaintiffs also downloaded several files being disseminated by each Defendant to confirm that Plaintiffs owned the copyrights of the sound recordings. *See* Whitehead Decl. ¶¶ 16, 17.

Despite having voluminous evidence of infringement being committed by each Defendant, Plaintiffs could not ascertain the name, address, or any other contact information for any of the Defendants. Whitehead Decl. ¶¶ 16, 21. Plaintiffs could, however, identify the

---

[3] Plaintiffs attached to the Complaint a list of a small subset of the copyrighted sound recordings being disseminated by each Defendant without authorization. *See* Exhibit A to the Complaint. That list shows, among other things, that each Defendant is infringing the copyrights of many of the Plaintiffs. Plaintiffs did not, however, list all of the infringing works each Defendant was disseminating.

Internet Protocol ("IP") address from which each Defendant was unlawfully disseminating Plaintiffs' copyrighted works. An IP address is a 10-digit number, such as 12.34.255.255, that specifically identifies a particular computer using the Internet. IP addresses are essential to the operation of the Internet because they are used by Internet Service Providers ("ISPs") to route information to the proper location. IP addresses are assigned to Internet users by their ISPs.

Using the IP address, Plaintiffs determined that Bright House Networks ("Bright House"), an ISP with the majority of its subscribers located in Central Florida, serves as each Defendant's ISP.[4] Bright House maintains logs that match IP addresses with subscribers. Second Whitehead Decl. ¶ 7. By looking at its IP address logs, Bright House can match the IP address, date, and time with the subscriber who was using that IP address when Plaintiffs observed the infringement. Thus, Bright House – and only Bright House – can identify the Defendants in this case.

Plaintiffs brought suit in this district because Bright House is located here and the vast majority of Defendants likely reside in central Florida. Plaintiffs brought a single suit rather than multiple suits because all of the Defendants are engaged in the same conduct, using the same P2P network, and using the same ISP. Moreover, each Defendant was disseminating copyrighted works owned by many, if not all, of the Plaintiffs, from his or her computer at the time each was caught. After filing the complaint in this case, Plaintiffs requested leave to serve immediate discovery on Bright House to obtain limited identifying information that would permit service on each Defendant. Absent such discovery, this case cannot proceed in any form.

---

[4] IP addresses are allotted in blocks to ISPs; publicly available databases allow copyright owners to determine, in general terms, the ISP that controls a particular IP address. Second Whitehead Decl. ¶ 7. Only the ISP, however, knows which subscriber was using a particular IP address allotted to the ISP at a given date and time.

## ARGUMENT

In his Report, the Magistrate Judge recommended that Plaintiffs' motion for discovery be denied and that Plaintiffs be directed to file 400 separate lawsuits in this jurisdiction, each of which raises common legal and factual issues and would require an identical subpoena to Bright House in order to identify the Defendant. Because this recommendation addresses issues that are premature, is wrong as a matter of law, would result in tremendous waste of judicial resources, and is wholly inconsistent with the decisions of 25 courts who have faced exactly the same factual and legal issues, Plaintiffs object to the recommendation and ask this Court to reject it. Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B), this Court reviews the Magistrate Judge's Report *de novo*.

As discussed below, the Court should grant Plaintiffs' motion so that the Defendants may be identified and served. The issue of joinder, raised *sua sponte* by the Magistrate Judge, is premature and can be addressed after the Defendants have been identified. In any case, Plaintiffs have met the liberal requirements for joinder under the Federal Rules. Severance at this time, would harm the Plaintiffs, would impose significant administrative burdens on the Court (in the form of 400 virtually identical lawsuits and 400 virtually identical motions for leave to take discovery, followed by 400 virtually identical subpoenas), and would do nothing to advance the interests of justice or of the Defendants. The Court should follow the 25 courts that have granted motions for leave to take discovery in similar cases and grant Plaintiffs' motion.

I.      **DISCOVERY OF THE DEFENDANTS' IDENTITIES IS NECESSARY TO ENABLE PLAINTIFFS TO VINDICATE THEIR RIGHTS.**

The Magistrate Judge's report does not address the merits of the motion that Plaintiffs filed.  Plaintiffs' motion for leave to take immediate discovery seeks only the right to serve discovery on Bright House to identify the Internet users who are unlawfully infringing Plaintiffs' copyrights.  Plaintiffs have satisfied the "good cause" standard required to take such expedited discovery.  *See* Memorandum of Law in Support of Plaintiffs' *Ex Parte* Motion for Leave to Take Immediate Discovery at 6-9 (Ex. 2) (discussing the "good cause" standard).  Plaintiffs cannot vindicate their rights unless and until Bright House identifies its infringing subscribers.  Moreover, Plaintiffs are suffering irreparable harm each day that Defendants continue to infringe their copyrights.  *See CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998) ("once a plaintiff establishes a prima facie case of copyright infringement, irreparable injury is presumed.").

This Circuit has held that it is an abuse of discretion to deny a motion to join Doe defendants in a suit where their identities can be uncovered through discovery.  *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997); *see also* Memorandum of Law in Support of Plaintiffs' *Ex Parte* Motion for Leave to Take Immediate Discovery at 5-6.  Indeed, courts regularly authorize discovery from ISPs to identify the defendants using the Internet to break the law.  *See, e.g., United Parcel Serv. of Am., Inc. v. John Does One Through Ten*, No. 03cv1639, 2003 WL 21715365, *1 (N.D. Ga. June 13, 2003) (authorizing expedited discovery from ISPs in order to determine the identity of defendants); *see infra* pages 12-13 (citing recent cases).  In all such cases, the plaintiffs do not know who the defendants are or where they reside.  Without discovery into the defendants' identities, plaintiffs injured by conduct over the Internet will never be able to enforce their rights.

As explained above and detailed in the two Whitehead Declarations previously submitted, the limited discovery that Plaintiffs seek is targeted directly to identifying the Defendants so that they can be served. When supplied with the IP address and the date and time of infringement, Bright House can definitively establish the identity and geographic location of the person to whom that IP address is assigned. Plaintiffs' *Ex Parte* Motion for Leave to Take Immediate Discovery thus seeks leave to issue a subpoena to Bright House so that Bright House can review its records and inform Plaintiffs of each Defendant's identity.[5]

Authorizing this limited discovery will not prejudice Defendants. Plaintiffs' motion contemplates that Bright House will notify each Defendant prior to disclosing his or her name and other identifying information. Thus, each Defendant will have the opportunity to file a motion to quash prior to the disclosure of his or her identity. Moreover, after being identified, each Defendant will have the opportunity to seek severance or transfer of the case against them. At such time, Plaintiffs, Defendants, and the Court can determine how this case should proceed, including whether some Defendants should be severed and/or whether the case should be transferred to another court. Plaintiffs believe that many of these issues will be moot because a significant number of Defendants, faced with the substantial evidence of infringement already developed by the Plaintiffs, will elect to settle. Nonetheless, all of the issues raised by the Magistrate Judge can be resolved after the Defendants have been identified.

---

[5] The Magistrate Judge suggested that Plaintiffs have not shown how identification of the subscriber will indicate the identity of the intended Defendant who was disseminating the copyrighted sound recordings. Mag. Report at 11. As explained in the two Whitehead Declarations, however, the IP address uniquely identifies a Bright House subscriber as the source of the infringement. It is possible, of course, that a family member whose name is not on the Bright House account was committing copyright infringement from the subscriber's computer. In that case, the Defendant is free to raise that issue in defense of this lawsuit.

## II.   THIS COURT SHOULD NOT SEVER THIS CASE INTO 400 LAWSUITS.

### A.   Consideration of Joinder Is Premature and Should Be Addressed Only After Defendants Have Been Identified and Notified.

Consideration of joinder is premature.  Here, the Magistrate Judge raised the issue of joinder *sua sponte*.  In most cases, joinder is raised by defendants, based on their assessment of whether litigation without co-defendants is preferable.  A court considering a challenge to joinder must determine whether severance will prejudice any party or result in undue delay of the litigation.  *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (noting that joinder is a fact-intensive inquiry that requires case-by-case adjudication).  Until the Defendants are identified, the Court cannot make that assessment.  Indeed, any resolution of this issue without all parties before the Court would amount to an advisory opinion based on arguments that a party to the litigation may never raise.  *See R.T. Vanderbilt Co. v. Occupational Safety & Health Review Comm'n*, 708 F.2d 570, 574 (11th Cir. 1983).

As the Supreme Court has made clear, the Federal Rules of Civil Procedure require courts to "entertain[] the broadest possible scope of action consistent with fairness to the parties," and "strongly encourage" the "joinder of claims, parties and remedies."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *Lasa Per L'Industria Del Marmo Societs Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) ("The intent of the rules is that all issues be resolved in one action, with all parties before one court, complex though the action may be.").  Thus, federal courts must "employ a liberal approach to permissive joinder of claims *and* parties in the interest of judicial economy."  *Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir. 2000).

Accordingly, this Court has wide discretion in determining whether joinder is appropriate and, if it is not, at what stage of the proceedings severance should be compelled.  *See id.* at 1324-

25.  Indeed, severance at such an early stage in the proceedings is disfavored because the Court has ample authority to order severance or to require separate trials at any time such an order is in the interest of justice and efficiency.  *See, e.g.,* 4 James W. Moore, *Moore's Federal Practice* § 20.09, at 20-58 (3d ed. 2003) ("Any party may move for a separate trial, or the court may order it on its own motion.  The court's discretionary authority to order separate trials eliminates all reasonable objections to the liberal joinder provisions of Rule 20."); *DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003) (denying motion to sever prior to discovery in "the interest of promoting judicial economy" and reserving "the right to sever the cases for trial").

Severance at this point would be particularly inappropriate because Defendants have not yet had the opportunity to present their positions regarding joinder.  The Magistrate Judge expressed concern that "failure to sever the claims against the Defendants would unduly hinder and burden the Defendants."  Mag. Report at 10.  But until the Defendants have been identified, notified and given a chance to participate in these proceedings, it is impossible to know whether Defendants believe they would be prejudiced by joinder.  Defendants may prefer to litigate together, rather than separately, given the commonality of issues among them and given the potential economic benefits to them of litigating the claims against them together.  Severance at this stage would deny them that choice.

Indeed, reserving the issue of joinder will not prejudice any Defendant in this case in any way.  Plaintiffs' motion for immediate discovery seeks only to obtain the identity of the individuals so that they may be served.  Each Defendant will have the opportunity to raise joinder after being identified.  At such time, this Court will be able to resolve the issues in the context of a live, concrete dispute.  By reserving the question of joinder until a later stage in the litigation, this Court can resolve the question with the benefit of knowing the identities and

geographic locations of the Defendants, the views of the Defendants concerning whether the claims should proceed separately or in a single lawsuit, and information provided by both sides about common factual and legal issues, as well as likely overlap of witness testimony.

Given the advantages of reserving judgment on the question of joinder until a later stage of this litigation, the overwhelming majority of courts to have ruled on Plaintiffs' identical motions for expedited discovery in similar cases have granted Plaintiffs' motions and deferred litigation of other issues, including joinder. This case is one of many similar copyright infringement cases recently brought by the Plaintiffs (and other record companies) against Doe defendants infringing Plaintiffs' copyrights over P2P networks. In each case, Plaintiffs sought immediate discovery and explained that, after Defendants are identified, the parties and the court can determine whether the case should proceed in that jurisdiction, whether Plaintiffs should pursue some Defendants in another forum, and whether the court should sever some claims.

Plaintiffs previously alerted the Magistrate Judge to seven courts that have granted Plaintiffs' motions for expedited discovery. *See* Plaintiffs' Response to Order to Show Cause Dated March 5, 2004 at 7-8 (attaching court orders as exhibits). Since that time, eighteen other courts have likewise granted Plaintiffs' motion for leave to take expedited discovery without first considering joinder or other issues. *See* Order, *Fonovisa, Inc. v. Does 1-67* (D. Col. Apr. 8, 2004) (attached as Ex. 5); Order, *Maverick Recording Co. v. Does 1-12* (D. Col. Apr. 8, 2004) (attached as Ex. 6); Order, *Motown Record Co. v. Does 1-5* (D. Col. Apr. 8, 2004) (attached as Ex. 7); Order, *Motown Record Co. v. Does 1-3* (D. Col. Apr. 8, 2004) (attached as Ex. 8); Order, *Warner Bros. Records Inc. v. Does 1-9* (E.D. Mich. Apr. 5, 2004) (attached as Ex. 9); Order, *Artista Records, Inc. v. Doe* (N.D. Cal. Apr. 5, 2004) (attached as Ex. 10); Order, *Atlantic Recording Corp. v. Does 1-13* (E.D. Va. Apr. 2, 2004) (attached as Ex. 11); Order, *Fonovisa,*

*Inc. v. Does 1-2* (E.D. Va. Apr. 2, 2004) (attached as Ex. 12); Order, *London-Sire Records, Inc.*

*v. Does 1-4* (C.D. Cal. Apr. 2, 2004) (attached as Ex. 13); Order, *Priority Records LLC v. Doe*

(S.D. Ind. Apr. 2, 2004) (attached as Ex. 14); Order, *Atlantic Recording Corp. v. Does 1-3*

(D.D.C. Mar. 31, 2004) (attached as Ex. 15); Order, *BMG Music v. Does 1-3* (D.D.C. Mar. 31,

2004) (attached as Ex. 16); Order, *Artista Records, Inc. v. Does 1-143* (E.D. Tex. Mar. 30, 2004)

(attached as Ex. 17); Order, *Capitol Records, Inc. v. Does 1-2* (C.D. Cal. Mar. 30, 2004)

(attached as Ex. 18); Order, *Warner Bros. Records Inc. v. Does 1-4* (C.D. Cal. Mar. 30, 2004)

(attached as Ex.19); Order, *Interscope Records v. Does 1-4* (D. Ariz. Mar. 30, 2004) (attached as

Ex. 20); Order, *Interscope Records v. Does 1-7* (M.D. Tenn. Mar. 29, 2004) (attached as Ex. 21);

Order, *Interscope Records v. Does 1-5* (S.D. Ind. Mar. 25, 2004) (attached as Ex. 22).[6]

As the District Court for the District of Columbia explained, "[i]t is clear to the Court that

Defendants must be identified before this suit can progress further." Memorandum Opinion,

*UMG Recordings v. Does 1-199* at 2 (D.D.C. Mar. 10, 2004) (attached as Ex. E to Plaintiffs'

Response to Order to Show Cause Dated March 5, 2004). Accordingly, that court concluded that

it was "premature[]" to consider joinder and other issues, and instead granted Plaintiffs' motion

to take immediate discovery. *Id.* Similarly, a judge in the Northern District of Georgia

---

[6] Only two courts have deviated from this approach, though neither adopted the approach
recommended by the Magistrate Judge here. One court severed the case into separate actions for
each defendant (but allowed joinder of the plaintiffs). That court then granted Plaintiffs' motion
for immediate discovery with respect to the one Defendant in the action that remained before the
judge. *See* Order, *BMG Music v. Does 1-203*, Civ. Act. No. 04-650 (E.D. Pa. Mar. 5, 2004),
*motion for reconsideration denied* (Apr. 2, 2004). A second court denied Plaintiffs' motion
without prejudice because the Magistrate Judge concluded that the four similar cases in that
district should be considered together. The Magistrate Judge therefore requested that the court's
executive committee consolidate the cases for purposes of resolving pre-trial motions, including
Plaintiffs' motion for leave to take immediate discovery. *See* Order, *Priority Records LLC v.
Does*, No. 4:04-cv-01136-WDB (N.D. Cal. Apr. 8, 2004). Notably, another court in that district
has already granted Plaintiffs' motion for leave to take immediate discovery. *See* Ex. 10
attached hereto.

concluded that joinder and other issues should be deferred so that they "can be resolved in the ordinary course of this litigation at the appropriate time." *See Motown Record Co., L.P. v. Does 1-252* at 3 (N.D. Ga. Mar. 1, 2004) (attached as Ex. F to Plaintiffs' Response to Order to Show Cause Dated March 5, 2004).

This Court should follow the well-reasoned decisions of these 25 courts.  By granting Plaintiffs' motion for immediate discovery, the Court will ensure that Plaintiffs can vindicate their rights and that each Defendant has the opportunity to raise joinder at an appropriate time.[7]

### B.    Plaintiffs and Defendants Are Properly Joined.

Even if the Court were to consider the question of joinder now, the Court should not adopt the Report and Recommendation to sever the claims in this case.  As even the Magistrate Judge recognized, "[t]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." Mag. Report at 4.  Here, that purpose is best served by allowing joinder.

To satisfy the joinder requirements of Federal Rule of Civil Procedure 20, a party must show "1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined." *Alexander,* 207 F.3d at 1323.  The Supreme Court has instructed courts to interpret the terms "transaction" and "occurrence" broadly in accord with Rule 20's central purposes of promoting trial convenience, expediting the resolution of disputes, and preventing unnecessary lawsuits. *See id.*

---

[7] If, at a later date, the Court decided that joinder was not appropriate, it could nonetheless consolidate them for joint hearing or trial to resolve any or all of the matters at issue pursuant to Federal Rule of Civil Procedure 42(a). *See, e.g., MLR, LLC v. U.S. Robotics Corp.*, No. 02C2898, 2003 WL 685504, at *3 (N.D. Ill. Feb. 26, 2003).

The Magistrate Judge's report suggests that Fed. R. Civ. P. 20 permits joinder only if all claims arise out of the "same" transaction or occurrence.  Mag. Report at 6-7 ("Federal Rule of Civil Procedure 20 refers to the same transaction or occurrence, not to similar transactions or occurrences.").  Rule 20, however, permits joinder of Plaintiffs and Defendants based on any *series* of transactions or occurrences, so long as there is some "logical relationship" between the transactions or occurrences.  *Mosley*, 497 F.2d at 1333; *Alexander*, 207 F.3d at 1323 (citing *Mosley* with approval).  Where, for example, a complaint alleges that the defendants engaged in a common scheme or pattern of behavior, Rule 20 is satisfied.  *See Moore v. Comfed Sav. Bank*, 908 F.2d 834, 839 (11th Cir. 1990).  Rule 20 thus ensures that "all reasonably related claims for relief by or against different parties" may be tried in the same proceeding.  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* 3d § 1653, at 410 (2003).

The allegations in Plaintiffs' Complaint satisfy these standards.  There can be no dispute that all of Plaintiffs' claims against the Defendants involve common questions of copyright law and common factual questions concerning the operation of Bright House's network and the Fast Track P2P network.  Each Defendant in this case was using the same instrumentalities to commit the exact same violation of law.  Moreover, the crux of Plaintiffs' Complaint is that Defendants and others have participated in a common scheme or pattern of behavior, without which no individual Defendant would have been able to commit much (if any) of the infringing activity that underlies Plaintiffs' Complaint.  Plaintiffs' Complaint alleges explicitly that each Defendant uses an online media distribution system (the Fast Track network) to distribute to and to download from other users of the same system – including the other Defendants – computer files that contain copyrighted sound recordings.  Compl. ¶ 24; Second Whitehead Decl. ¶ 4; *see also*

Whitehead Decl. ¶¶ 7, 16. Each Defendant thus participates in the same online swap meet, exchanging pirated digital copies of Plaintiffs' copyrighted works. Plaintiffs set forth a sample of the sound recordings that each Defendant is disseminating in Exhibit A to the Complaint, but each Defendant is also disseminating hundreds of other copyrighted sound recordings owned by others of the Plaintiffs.[8] *See* Exhibit A to the Complaint. Plaintiffs have detailed lists of the sound recordings offered by each Defendant, but have submitted only a sample so as not to overwhelm the court with paper. *See* Second Whitehead Decl. ¶ 5.

Plaintiffs' right to relief from each of the Defendants thus arises out of the same series of transactions (the Defendants' unlawful downloading and dissemination of Plaintiffs' sound recordings using the same P2P network) and involves common questions of law (violation of the copyright laws). In such situations, courts have regularly permitted joinder of all Plaintiffs and Defendants. *See, e.g., In re Monon Tel. Co.*, 218 F.R.D. 614, 616 (N.D. Ind. 2003) (allowing joinder where defendants' actions "while undertaken independently of one another, are part of a series of similar occurrences" and where each defendant used similar pirate devices designed for the purpose of intercepting satellite television programming); *DIRECTV, Inc. v. Hosey*, 289 F. Supp. 1259, 1262 (D. Kan. 2003).[9]

---

[8] The Magistrate Judge appeared to focus narrowly on the sample of infringing sound recordings that Plaintiffs provided and ignored Plaintiffs' sworn testimony that Plaintiffs' have volumes of additional evidence against each Defendant detailing hundreds of copyrighted sound recordings being disseminated by each Defendant.

[9] The Magistrate Judge cited one case severing claims brought by satellite TV providers against those stealing satellite signals. The courts have split on whether joinder was appropriate in those cases. *See, e.g., DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003); *DIRECTV, Inc. v. Adkins*, No. 1:03CV00064, 2003 WL 23096482, at *1-*2 (W.D. Va. Dec. 29, 2003) (noting that DIRECTV has faced "mixed results" when objecting to severance in its satellite signal theft actions); *In re Monon Tel. Co.*, 218 F.R.D. 614 (N.D.Ill. 2003). Notably, the argument for joinder is far stronger in this case because of the concerted action in this case: each Defendant was using the same P2P network to disseminate copyrighted works unlawfully.

Against this background, the Magistrate Judge's conclusion that the claims of each

Plaintiff against each Defendant must be brought in a separate lawsuit is incorrect.  Mag. Report

at 5.  By effectively requiring that all claims arise out of the *same* transaction or occurrence,

rather than a series of logically related transactions or occurrences, the Magistrate Judge applied

an erroneous and constricted view of Rule 20.  In the Magistrate Judge's view, *each Plaintiff*

would have to file a separate action against *each Defendant*, despite the fact that 1) each

Defendant was disseminating the copyrighted works of many (if not all) of the Plaintiffs at a

specific point in time from a specific IP address; 2) all Defendants participated in the same P2P

network, unlawfully exchanging files with each other, as well as other users of that network, and

3) all Defendants are subscribers of the same ISP, which is the sole repository for the

information needed (the identities of the Defendants) to permit this suit to proceed.

Indeed, the Magistrate Judge's narrow view of joinder would radically alter federal court

practice.  Under the Magistrate Judge's view, each Plaintiff must file a separate suit against each

Defendant, making for 400 different cases.  In this case, even though each individual Defendant

was disseminating copyrighted works owned by many (if not all) of the Plaintiffs from his or her

same computer, the Magistrate Judge would require each of the recording companies to file a

separate suit.  Rule 20, however, does not require that result.  Indeed, copyright plaintiffs

routinely bring suit together against infringers who are disseminating works whose copyrights

are owned by different of the plaintiffs.  *See, e.g., UMG Recordings, Inc. v. Sinnott*, 300 F. Supp.

2d 993 (E.D. Cal. 2004) (summary judgment granted in copyright suit brought by over 20 record

labels against operator of a flea market); *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp.

2d 1310 (S.D. Fl. 2003) (default judgment in suit by multiple record companies against

convenience store unlawfully distributing copyrighted works); *SKS Merch, LLC v. Barry*, 233 F.

Supp. 2d 841 (E.D. Ky. 2002) (authorizing nationwide preliminary injunction against multiple Doe defendants in a single action where defendants were bootleg vendors engaged in the unauthorized sale of copies of plaintiff's merchandise, even where plaintiff did not allege the defendants were participants in the same act of unauthorized vending); *Harm's, Inc. v. Theodosiades*, 246 F. Supp. 799, 799-800 (E.D. Pa. 1965) (allowing joinder of plaintiffs who were copyright owners of different musical compositions each of which defendant allegedly violated). Similarly, discrimination plaintiffs routinely bring suit together, even if the individuals committing discriminatory acts are different, so long as there is some logical relationship among the claims. *See Alexander*, 203 F.3d at 1303. Indeed, the Magistrate Judge's view prejudices not only Plaintiffs, but also Defendants. If the Magistrate Judge's application of the law was correct, each Defendant would potentially have to defend 16 different lawsuits (one from each Plaintiff recording company), all arising out of the exact same conduct (dissemination of copyrighted works over a P2P network at a specific point in time). That conclusion cannot be squared with liberal standards of joinder compelled by the Federal Rules.

Indeed, in a case similar to this one, Judge Kendall Sharp of this Court rejected a motion to sever brought by various Amway distributors who were unlawfully disseminating copyrighted works. *See Arista Records, Inc. v. Amway Corp.*, Case No. 96-1875-CIV-ORL-18. In that case, 12 record company plaintiffs sued 86 defendants alleging 239 counts of copyright infringement; the common link among the defendants was – as in this case – that each defendant was using the same means of distribution for the unlawful dissemination of copyrighted works owned by the Plaintiffs. In the *Amway* case, defendants argued that each distributor was acting separately and disseminating different copyrighted works at different times. Judge Sharp, however, rejected

18

such arguments, recognizing that the suit met Rule 20's liberal standards for joinder.[10]  *See*

Order, *Arista Records, Inc. v. Amway Corp.*, Case No. 96-1875-CIV-ORL-18 (Nov. 3, 1996)

(attached as Ex. 23).  This case is not different in any material respect.

The Magistrate Judge also erred in concluding that severance is necessary in this case as

a matter of convenience.  Mag. Report at 20.  In fact, the opposite is true.  This case presents a

quintessential example of the benefits of joinder.  As the Eleventh Circuit has held, "[p]lainly,

the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of

disputes, thereby eliminating unnecessary lawsuits." *Alexander,* 207 F.3d at 1323.  Here, if the

Defendants were not joined in a single lawsuit, the result would be the division of this case into

25 lawsuits and 25 motions for leave to issue 25 virtually identical subpoenas to Bright House.

Thus, the litigation would proceed exactly as here, except with a far greater burden on Plaintiffs,

Bright House, and the Court.  If, as the Magistrate Judge recommended, the Plaintiffs were not

joined in a single lawsuit, the burden would be even greater (16 Plaintiffs each filing 25 lawsuits

– 400 suits).  Severance would therefore impose significant burdens on the judges of this Court

and would represent precisely the kind of inefficient litigation that Rule 20 is designed to avoid.

---

[10] The Magistrate Judge cites cases in which courts have granted motions for severance, but those cases raise far more distinct factual and legal issues and much more complex fact patterns.  In *Rappoport v. Spielberg,* 16 F. Supp. 2d 481, 496-97 (D.N.J. 1998), for example, a *pro se* plaintiff sued entities across the entire entertainment industry (ranging from Steven Spielberg to Pizza Hut to Portland, OR's cable access station) for alleged surveillance and theft of his ideas; in contrast to the virtually identical allegations against each Defendant in this case, in *Rappoport,* the plaintiff alleged that each defendant had used his works separately and differently.  Similarly, in *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229 (M.D. Tenn. 2001), plaintiffs sued 770 companies that occupied a wide variety of points in the chain of distribution of music (distributors, publishers, artists, etc.) in a 901-page complaint.  Faced with such a wide array of allegations, the Court held that the case was unmanageable and severed it.  *Id.* at 231-32.  Here, the case is a much more manageable size.  There are twenty-five Defendants (not 770), a single count of copyright infringement against each Defendant, and a short complaint that presents identical issues of law relating to each Defendant.

The Magistrate expressed particular concern about the burden on "the Clerk's office who, each time an order was docketed in the case, would be obliged to prepare and mail a copy of the order to every defendant." Mag. Report at 10. The burdens on the Clerk's office would be even greater, however, if, as the Magistrate Judge recommends, each of the Plaintiffs' claims against each of the Defendants were separated into individual lawsuits. In that instance, instead of one lawsuit in which notices would be sent to twenty-five defendants, there could be as many as 400 separate lawsuits, each with separate notices to be sent to different parties. The overall burden on the Court and the Clerk's office would thus be substantially greater.

**CONCLUSION**

For the foregoing reasons, the Court should not adopt the Magistrate Judge's Report and Recommendation, should grant Plaintiffs' *Ex Parte* Motion For Leave to Take Immediate Discovery, and should enter an Order substantially in the form of Proposed Order submitted with that motion.

DATED: _____4|15|2004_____          _____K. Doud   (for)_____
                                    Karen L. Stetson
                                    Florida Bar No. 742937
                                    Trial Counsel
                                    Broad and Cassel
                                    201 South Biscayne Blvd., Suite 3000
                                    Miami, Florida 33131
                                    Telephone: (305) 373-9400
                                    Facsimile: (305) 373-9443

                                    and

                                    Kimberly Doud, Esquire
                                    Florida Bar No. 0523771
                                    Broad and Cassel
                                    390 North Orange Avenue, Suite 1100
                                    Orlando, Florida 32801
                                    Telephone: (407) 839-4200
                                    Facsimile: (407) 425-8377

                                    ATTORNEYS FOR PLAINTIFFS

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

## REFER  TO  COURT  FILE